## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAFAEL D., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:22-cv-148(MPS) |
| | : | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | : | |
| | : | |
| | : | |
| Defendant, | : | |

### RECOMMENDED RULING ON PENDING MOTIONS

Rafael D. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated May 12, 2021. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Pl. Br., Dkt. #13) and defendant's motion to affirm the decision of the Commissioner (Def. Br., Dkt. #15).

For the following reasons, the Court recommends that plaintiff's motion to remand should be DENIED and the Commissioner's motion to affirm should be GRANTED.

## STANDARD

"A district court reviewing a final . . . decision [of the
Commissioner of Social Security] pursuant to section 205(g) of
the Social Security Act, 42 U.S.C § 405(g), is performing an
appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d
Cir. 1981).[1] "The findings of the Commissioner of Social Security
as to any fact, if supported by substantial evidence, [are]
conclusive . . ." 42 U.S.C. § 405(g). Accordingly, the court may
not make a *de novo* determination of whether a plaintiff is
disabled in reviewing a denial of disability benefits. Id.;
Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860
(2d Cir. 1990). Rather, the court's function is to ascertain
whether the Commissioner applied the correct legal principles in
reaching his conclusion, and whether the decision is supported
by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d
Cir. 1987).

Therefore, absent legal error, this court may not set aside
the decision of the Commissioner if it is supported by
substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d
Cir. 1982). Further, if the Commissioner's decision is supported
by substantial evidence, that decision will be sustained, even

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks,
alterations, emphases, footnotes, and citations are omitted.

where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . .." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## **PROCEDURAL HISTORY**

Plaintiff initially filed for disability insurance benefits under Title II Social Security Disability Insurance Benefits on July 10, 2019. (R. 320) Following an initial denial and denial on reconsideration, Administrative Law Judge Brien Horan held a hearing on August 19, 2020. (R 38-83.) Following the hearing, ALJ Horan issued a written decision denying plaintiff's

---

of these enumerated impairments, the Commissioner will automatically consider him or her disabled without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

application on August 25, 2020. (R. 154-77.)  Plaintiff thereafter sought review by the Appeals Council and the decision was remanded on January 11, 2021. (R. 178-82.)  The order remanding the decision of ALJ Horan gave explicit instructions regarding what issues needed to be resolved following a new hearing. (R. 180.) Thereafter, on April 22, 2021, Administrative Law Judge Deirdre Horton (hereinafter "the ALJ") held another hearing with the plaintiff and counsel. (R. 84-119.) The ALJ issued a second unfavorable decision on May, 12, 2021. (R. 15-36.) On November 26, 2021, the Appeals Council denied plaintiff's request for review. (R. 1-6.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #1.)

The plaintiff has filed a statement of material facts/medical chronology along with his brief. (Dkt. #13-2.) Defendant, accordingly, filed a response to the statement of material facts indicating general agreement and some additional material facts.  (Dkt. #15-2.)  The Court has reviewed, and generally adopts the facts as expressed in the parties' submissions and will not fully recite them here.  The Court will, of course, cite to specific facts and the record as needed throughout this opinion.

## THE ALJ'S DECISION

After applying the five-step evaluation process, the ALJ concluded that plaintiff had "not been under a disability within the meaning of the Social Security Act since July 9, 2019, the date the application was filed. (R. 16.)

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the application date of July 9, 2019. (R. 18.) The ALJ did note that the plaintiff's earning records showed some income, but it fell below the monthly substantial activity guidelines. (R. 18.)  At step two, the ALJ found that plaintiff had the following severe impairments: "obesity, bilateral knee osteoarthritis, post-traumatic stress disorder, and anti-social personality disorder." (R. 18.) The ALJ additionally noted that the plaintiff suffered from a variety of conditions that were not severe: kidney disease, diabetes mellitus with neuropathy, hypertension, and asthma.  (R. 18.)  The ALJ indicated that these conditions were either considered mild, stable, or controlled with medication and treatment. (R. 18-9.) Additionally, plaintiff has a history of substance abuse. However, the ALJ asserts there is very little evidence to show it has an impact on his ability to work and is considered in remission. (R. 19.)

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (20 C.F.R. 416.920(d), 416.926, 416.920(d) and 416.926). (R. 19.) First, the ALJ reviewed Listing 1.18 pertaining to abnormality of a major joint in any extremity.  The ALJ found that the plaintiff did not meet the criteria and that the record indicated plaintiff did not use any assistive device, presented often with a normal gait, and could utilize upper extremities to sustain and complete work related activities involving fine and gross movements.  (R. 19-20 (citing Ex. 2F/8; 5F; 7F/59; 8F/3, 4, 7; 29F/4, 8, 14).)  The ALJ also considered Listings 12.08 and 12.15 for disorders related to plaintiff's alleged mental impairments.  However, after a thorough analysis of assessments from state agency consultants, Dr. Schwartzreich and Dr. Uber, the ALJ concluded that the plaintiff's medical records and other evidence in the record did not indicate sufficient symptomology to meet any of the identified Listings. (R. 20-21. (citing Exs. 1A/8-9; 3A/8-9.)

The ALJ then found that the plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except that he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He must never climb ladders, ropes, or scaffolds, nor work around

unprotected heights.  The [plaintiff] must have no
concentrated exposure to respiratory irritants such as
dust, fumes, gasses and odors.  He can frequently handle
and finger.  He can perform simple, routine tasks, but
not a production rate pace.  He can tolerate occasional
interactions with supervisors after initial training
and occasional, non-collaborative, interactions with
coworkers.  He must perform no work with the general
public.

(R. 21-22.) At step four, the ALJ concluded that plaintiff could

not perform his past relevant work as a food sales clerk. (R.

28.)  At step five of the process, the ALJ determined that based

on the testimony of a vocational expert, there were sufficient

jobs available in the national economy that plaintiff can

perform.  Specifically, the ALJ identified the positions of hand

packer, production worker, and production inspector.  (R. 30.)

Upon the completion of the five-step sequential evaluation

process, the ALJ determined that the plaintiff was not under a

disability since his date of application. (R. 30.)

## DISCUSSION

The plaintiff makes two primary arguments in support of his

motion to reverse.  First, Plaintiff argues that the ALJ erred

by failing to follow the prior remand order. (Pl. Br. 7-13.)

Second, plaintiff asserts that the ALJ erred in making the RFC

determination. (Pl. Br. 14-18.)  The Court will address each

argument in turn.

**1. The ALJ Followed the Prior Remand Ruling**

The plaintiff argues that the ALJ improperly failed to consider medical source opinions as was required under the remand order issued by the Appeals Council on January 11, 2021. (Dkt. #13-1 at 7.)

The Appeals Council found that the prior ALJ's decision was faulty in that the decision did not properly evaluate finding from State Agency Consultants Drs. Schwartzreich and Uber. (R. 179.)  The remand order stated that Drs. Schwartzreich and Uber had found plaintiff "capable of maintaining concentration, persistence, and pace for 1-2 step tasks for 2 hours over an 8-hour period." (R. 179.)  Upon review, the previous ALJ noted that these opinions were persuasive, but issued an RFC that limited plaintiff to "simple routine and repetitive tasks" but failed to mention or limit plaintiff to 1-2 step tasks. (R. 179.)  Accordingly, the remand order in this case dictated that upon remand the ALJ "should give further consideration to the medical source opinions and prior administrative medical findings pursuant to the provisions of 20 CFR 416.920c." (R. 179.)  The Appeals Council noted that the discrepancy between these limits on the plaintiff was important because the ALJ found the plaintiff capable of the job Cook Helper, which a Vocational Expert testified would be excluded for an individual limited to 1-2 step tasks.  (R. 179.)

The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the plaintiff's] medical sources."  20 C.F.R. § 416.1920c(a).  The ALJ will consider any medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]"  Id. §§ 404.1520c(c), 416.920c(c).  The ALJ must explain how he considered the "supportability" and "consistency" factors in the evaluation, but the ALJ need not explain how he considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical.  20 C.F.R. § 404.1520c(b), 416.920.

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior

10

administrative finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion(s) or prior administrative
finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

The Court has been able to distill plaintiff's argument
into three main categories in relation to plaintiff's argument
that the ALJ failed to follow the remand order.  First, that the
ALJ erred in the evaluation of the medical opinions related to
plaintiff's physical condition.  Second, that the ALJ erred in
relation to the evaluation of plaintiff's psychological
condition and the 1-2 step process issue.  Finally, that these
errors left a gap in the record that the ALJ improperly failed
to fill and instead substituted her lay judgment in place of
medical opinion evidence.

### a. Physical Condition

As already noted, plaintiff argues that the ALJ failed to
analyze the medical opinions in accordance with the remand order
and the regulations. (Dkt #13-1 at 7-13.)  The first analysis
that plaintiff questions is in relation to Drs. Fine and
Spetzler, who acted as state agency consultants in this case
related to plaintiff's medical condition.  Specifically,
plaintiff questions why the state agency consultants' opinions
were found less persuasive.  Plaintiff argues that is improper

because they are based in part on the consultive examination performed by Dr. Reiher, which was found to have some persuasiveness. (Dkt. #13-1 at 8; R. 25-26.)  Plaintiff argues this inconsistency is an error and left gaps in the record that the ALJ should have filled through use of a medical expert. (Dkt. #13-1 at 8-10.)

While the Commissioner's brief does not specifically address the opinions of these doctors, it does highlight the analysis of the ALJ in relation to the physical symptoms plaintiff argues were not addressed. (Dkt. #15-1 at 8-10.)

Upon a review of the ALJ's decision, the Court finds that substantial evidence supports the persuasiveness determinations made regarding Drs. Fine, Spetzler, and Reiher.  The ALJ indicated that the "less persuasive" opinions of Drs. Fine and Spetzler were from state agency consultants who had relied on records of the consultive examination performed by Dr. Reiher, among other records. (R. 25.) The ALJ noted that the mild postural limitations found by Drs. Fine and Spetzler were supported by evidence in the record showing:

> normal extremity strength, normal and independent gait, intact sensations at numerous examinations and ability to squat fully, rise from a chair independently and get on and off an examination table limit him to lifting and/or carrying twenty pounds occasionally and ten pounds frequently, sitting for two hours in an eight-hour workday, standing and/or walking for six hours in

an eight-hour workday, frequently handling and fingering
and occasionally climbing ramps and stairs, balancing,
stooping, kneeling, crouching and crawling as he does
not possess the physical ability and stamina to lift
and/or carry more weight, walk and/or stand for longer
periods of time and consistently perform such postural
or manipulative activities during the course of an
eight-hour workday

(R. 25)(citing exs. 2F/2, 8; 5F; 7F/59; 8F/3-4, 6-7; 14F/4;

29F/19; 31F/6.)  However, the ALJ found that the records failed

to properly evaluate plaintiff's knee pain and the impact of his

obesity, both conditions the ALJ determined to be severe.  The

ALJ notes that if those conditions had been assessed the

plaintiff would never be able to "climb ladders, ropes or

scaffolds for safety reasons." (R. 25)(citing exs. 2F/2;

5F;8F/6; 10F/4; 13F/14; 29F/19; 31F/5-6.)

Further, the ALJ noted that Dr. Reiher, as a consultive

examiner, was limited by not seeing the longitudinal medical

record of plaintiff.  However, Dr. Reiher had the opportunity to

examine plaintiff in person.  (R. 25-26.)  This differentiation

alone appears to be sufficient reasoning by the ALJ to apply

slightly differing levels of persuasiveness to Drs. Fine,

Spetzler, and Reiher.

### b. Psychological Condition

Plaintiff argues that the ALJ erred in her evaluation of

the medical opinion evidence related to plaintiff's

psychological condition.  The essence of plaintiff's assertion

13

is that the ALJ failed to evaluate the opinion evidence under
the regulations and as required by the Appeals Council remand in
relation to the issue regarding 1-2 step tasks.  (Dkt. #13-1 at
10-13.)  In response the Commissioner argues that the ALJ did a
sufficient job of evaluating the opinions of Drs. Schwartzeich
and Uber, who had acted as state agency consultants in relation
to plaintiff's mental health.  Specifically, the Commissioner
identified that there are medical opinions in the record, plus
other evidence in the record showing that the plaintiff, while
limited in some fashion, was not limited to 1-2 step tasks.
(Dkt. #15-1 at 4-8.)

Drs. Schwartzreich and Uber issued medical opinions in
August and November of 2019, respectively.  The ALJ did an
initial review of the opinion and supporting evidence when
discussing whether the plaintiff's conditions met the listings
requirements at step 3.  (R. 20.) Both doctors opined that
plaintiff had "mild limitations in understanding, remembering or
applying information, and moderate limitations in interacting
with others, concentrating persisting or maintaining pace and
adapting or managing himself." (R. 20.) In finding that the
assessments of Drs. Schwartzreich and Uber were of "some
persuasiveness," the ALJ found that they relied on reports of
improved mental health symptoms with medication. (R. 20.)

Most important to this discussion, the ALJ found that the other evidence of record supports the finding of mild limitations in the areas of understanding, remembering or applying information. (R. 20.)  The records cited show the plaintiff presenting with intact memory, average intelligence, and normal attention and concentration.  (R. 1357.) Additional records continue to show similar indications. (*See, e.g.* R. 1446, 1453, 1459-60, 1508.)  The ALJ also identified evidence in the record to support the finding of moderate limitations in concentrating and persisting or maintaining pace.  While there are some records indicating problems with multi-tasking and some periods of distractibility, the findings of Drs. Schwartzreich and Uber are consistent with the substantial nature of records that show plaintiff presenting with normal or intact concentration, logical, linear and goal-directed thought.  (R. 496, 1357-58, 1446, 1453, 1460, 1509, 1511, 1513.)

In those same medical opinions Drs. Schwartzreich and Uber opined that the plaintiff would be limited to performing 1-2 step tasks for two hours over and eight-hour period. (R. 26.) In evaluating the persuasiveness of this limitation, the ALJ indicated that it was inconsistent with the record evidence cited above.  Additionally, the ALJ highlighted that the plaintiff had attended and completed two educational programs. Platform for Employment, is a program that assists ex-convicts

to re-enter the workforce.  (Dkt. #13-1 at 11.) Strive is a
United Way program that provides a multi-week job seeking skills
and readiness course.  (Dkt. #13-1 at 11.)

Plaintiff asserts that the ALJ's reliance on these programs
is insufficient, as the evidence does not indicate an ability to
do more than 1-2 step tasks.  The Court disagrees.  The record
evidence cited by the ALJ, along with the evidence related to
the programs is sufficient to establish substantial evidence to
support the ALJ's persuasiveness determination regarding Drs.
Schwartzreich and Uber medical opinions.

Plaintiff cites to evidence in the record to show that
plaintiff suffered from mental health limitations.  "However,
whether substantial evidence supports plaintiff's position is
not the question to be decided here. Rather, the question is
whether substantial evidence supports the ALJ's decision." Gina
C. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00423(SALM), 2022 WL
167922, at *6 (D. Conn. Jan. 18, 2022).  Based on the evidence
in the record, the Court concludes that there is substantial
evidence in the record to support the ALJ's decision.

### c. The Alleged Gap in the Record

Plaintiff also makes a passing argument that the ALJ, by
only providing limited levels of persuasiveness to the medical
source opinions, has created a gap in the record.  (Dkt. #13-1

at 10.)  Plaintiff contends that the ALJ was, therefore, required to fill the gap by seeking out additional medical opinions.  The Court does not agree.  While "some courts have held that if an [ALJ] gives only little weight to <u>all</u> the medical opinions <u>of record</u>, the [ALJ] creates an evidentiary gap that warrants remand." <u>Gina C.</u>, 2022 WL 167922, at *8 (emphasis in original).  However, it also has been held that "in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains *some* useful assessment of the claimant's limitations from a medical source." <u>Morales v. Colvin</u>, No. 3:16-CV-0003(WIG), 2017 WL 462626, at *3 (D. Conn. Feb. 3, 2017.)  As discussed, the ALJ evaluated the medical source opinions and various treatment notes in the record.

The plaintiff also appears to argue that the medical source statements of Drs. Fine and Spetzler are not useful because they fail to review medical records related to plaintiff's neuropathy and kidney disease.  The Court does not agree.  A review of the Consultive Examination from Dr. Reiher shows a reference to diabetic neuropathy in the medical source statement, referred to and considered by both state agency consultants. (R. 551-54.) Additionally, the ALJ's opinion discussed both conditions when determining that they were not severe.  The ALJ noted that

plaintiff suffered from kidney disease and found that it was
mild and stable.  (R. 19.)  Evidence cited by the ALJ indicates
that the plaintiff's kidney disease symptoms started in 2020 and
the plaintiff described his symptoms as mild. (R. 1773.)  The
record from the Pact Kidney Center indicates that the problem
was stable.  (R. 1773.)  Further, the ALJ noted plaintiff's
diabetic neuropathy, and while some records cited by plaintiff
indicate trouble with his legs, other records indicate the
condition was controlled and the plaintiff had "normal extremity
sensations" at examinations. (R. 19, 521, 528, 730-31.)
Further, the ALJ noted in discussing plaintiff's symptoms that
the neuropathy was treated with gabapentin, plaintiff presented
with a normal gait, and intact extremity sensations at some
examinations including the consultive examination reviewed by
the state consultants.  (R. 24, 528, 551-54, 730-31, 734, 1786.)

     This case, as discussed supra, contains medical opinions
with various amounts of persuasiveness and supported by
discussion and citations to other evidence in the record.  The
case does not present a situation where all medical source
opinions have effectively been rendered useless and no other
evidence has been cited to support the findings of the ALJ.
"Although the ALJ's conclusion may not perfectly correspond with
any of the opinions of medical sources cited in his decision, he
was entitled to weigh all of the evidence available to make an

RFC finding that was consistent with the record as a whole."
Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013)


2. **The RFC Determination is Supported by Substantial Evidence**

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record."  20 C.F.R. § 404.1520(e).  An individual's RFC is the most an individual can still do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  Plaintiff has the burden of establishing a diminished RFC.  See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

Plaintiff devotes the final pages of his brief to argue that the ALJ's RFC determination is not supported by substantial evidence.  Specifically, the plaintiff argues that the ALJ "composed an RFC description that is not based on medical evidence and failed to include the relevant factors that means the difference between a finding of disabled, or not disabled." (Dkt. #13-1 at 14.)  First, the plaintiff contends that the ALJ should have included the 1-2 step limitation discussed previously.  To support this assertion the plaintiff cites to a

number of mental health records and opinions included in the
record and previously discussed.

The Commissioner argues that this is, once again,
insufficient because there is still substantial evidence in the
record to support the ALJ's ultimate RFC determination regarding
plaintiff's mental health limitations and abilities.  For the
same reasons discussed earlier, the Court agrees with the
COmmissioner.

In relation to plaintiff's mental condition and
limitations, the ALJ cited to various medical sources in the
record, including Dr. Guerrera, one of plaintiff's treating
physicians, to determine an appropriate RFC. (R. 27.)  The ALJ
found the opinion of Dr. Guerrera to have some persuasiveness,
noting that plaintiff and Dr. Guerrera had a treating
relationship, albeit brief, and that Dr. Guerrera saw plaintiff
once a month.  The ALJ noted, and accepted for purposes of
formulating an RFC, Dr. Guerrera's findings that the plaintiff
struggled "handling frustration, utilizing coping skills,
interacting with others, performing activities at a reasonable
pace and persisting in simple activities."  (R. 28.)
Additionally, the ALJ accepted the assessment from Dr. Guerrera
that the plaintiff could carry out "single and multi-step
instructions." (R. 28.) The ALJ also noted a number of medical

records and noted that the limitations and findings of Dr. Guerrera are consistent with the longitudinal treatment notes in plaintiff's medical records.  (R. 28.)

The RFC determination included specific limitations on plaintiffs' ability to work from a mental health standpoint.  It stated in part, plaintiff "can perform simple, routine tasks, but not a production rate pace.  He can tolerate occasional interactions with supervisors after initial training and occasional, non-collaborative, interactions with coworkers.  He must perform no work with the general public." (R. 21-22.) These limitations take into account the concerns raised by plaintiff and their inclusion in the RFC is supported by substantial evidence.

Plaintiff also argues that he would be off task too frequently to work.  Specifically, plaintiff asserts that the off-task behavior would result from physical pain related to diabetic neuropathy, chronic left knee pain, and kidney disease. (Dkt #13-1 at 16-17.)  In making this argument the plaintiff asserts that the ALJ failed to properly evaluate plaintiff's alleged symptoms under the regulations.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers

21

from a medically determinable impairment that could reasonably
be expected to produce the symptoms alleged." Genier v. Astrue,
606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)).
"If the claimant does suffer from such an impairment, at the
second step, the ALJ must consider 'the extent to which [the
claimant's] symptoms can reasonably be accepted as consistent
with the objective medical evidence and other evidence' of
record." Genier, 606 F.3d at 49 (alterations in original)
(quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the
ALJ will] consider all [of an individual's] symptoms, including
pain, and the extent to which [his or her] symptoms can
reasonably be accepted as consistent with the objective medical
evidence and other evidence."  20 C.F.R. § 404.1529(c).

To the extent that the plaintiff is alleging error by the
ALJ in the evaluation of pain and symptoms, the Court disagrees.
The ALJ noted plaintiff's alleged symptoms in relation to the
medical conditions cited by plaintiff and went on to include an
in-depth review of the medical treatment records which spanned
three pages of the decision. (R. 22-24.)  The ALJ provided a
sufficient analysis of all the medical impairments, severe and
otherwise.

The Court has reviewed the order of the Appeals Council and
the ALJ's decision.  The ALJ's decision properly evaluated and

applied persuasiveness to the medical opinion evidence.
Further, the RFC was supported by substantial evidence.  A
reviewing Court does not "decide the facts anew, nor [] reweigh
the facts, nor [] substitute its judgment for the judgment of
the ALJ. Rather, the decision of the ALJ must be affirmed if it
is based upon substantial evidence even if the evidence would
also support a decision for the plaintiff." Bellamy v. Apfel,
110 F. Supp. 2d 81, 87 (D. Conn. 2000). "Indeed, [t]he fact that
[plaintiff] does not agree with [the ALJ's] findings, does not
show that the ALJ failed to comply with the applicable
standards." Gina C. v. Comm'r of Soc. Sec. Admin., No.
3:21CV00423(SALM), 2022 WL 167922, at *10 (D. Conn. Jan. 18,
2022).  Here, although there may be evidence in the record to
support plaintiff's position, there is nevertheless substantial
evidence to support the ALJ's decision.

### CONCLUSION

Based on the foregoing reasons, the Court recommends that
plaintiff's motion for an order to remand the Commissioner's
decision (Dkt. #13) should be DENIED and the Commissioner's
motion to affirm that decision (Dkt. #15) should be GRANTED.

This is a recommended ruling. **Any objections to this
recommended ruling must be filed with the Clerk of the Court
within fourteen (14) days of being served with this order.** *See*

Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), & 72; D. Conn. L. Civ. R. 72.2(a); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995); Small v. Sec'y of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED this **16th** day of **February, 2022,** at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge